Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 CR 933 - 1 | **DATE** | 10/20/2004 |
| **CASE TITLE** | USA vs. Hernandez | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Defendant's motion to suppress evidence [14-1] is granted in part and denied in part. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 21 2004 | |
| | Docketing to mail notices. | | date docketed | 60 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 10/20/2004 | |
| MPJ | courtroom deputy's initials | | date mailed notice | |
| | | | MPJ | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 03 CR 933 |
| | ) | |
| VINCENTE HERNANDEZ | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Vincente Hernandez has filed a motion to suppress statements made by him and evidence seized following his arrest on September 26, 2003. Mr. Hernandez argues that his rights under the Fourth and Fifth Amendments to the U.S. Constitution were violated by the actions of the police and federal agents. I held an evidentiary hearing at which police, a DEA agent, and Mr. Hernandez testified.

A few days before Mr. Hernandez was arrested, Chicago police received a tip from a confidential informant, who had previously supplied reliable information, that two or more persons were selling heroin from three apartments on Chicago's North side. The informant said he had seen two kilograms of heroin at one of the addresses, 5328 N. Sawyer, and said he had seen a pregnant woman there. He said three men were involved in selling the heroin. He gave police the three addresses, 5312, 5328 and 5526 N. Sawyer, and identified Mr. Hernandez' vehicle, a Chevrolet Tahoe. From the temporary license plate on the Tahoe, police were able to obtain Mr. Hernandez' complete name and a photograph. The CI identified

the photograph as that of the heroin dealer. Police then set up
surveillance by a task force that included Chicago police and
federal agents. At some point they saw Mr. Hernandez get out of
the Tahoe and go into the building (a four flat) at 5328 N. Sawyer.
On September 26, 2003, they saw a pregnant woman leave 5328 Sawyer
with a back pack. She was seen a few minutes later going into 5526
Sawyer. Then a man left 5312 and go into 5328. Although he had
nothing with him when he went into 5328 he exited sometime later
carrying a red and black gym bag. Police followed him and stopped
him, allegedly for a traffic violation. They found heroin, of the
description given by the CI, in the gym bag. That arrest is not in
question on this motion. Police then went back to 5328 and
discovered that Mr. Hernandez' Tahoe was no longer there. Chicago
Police officer Jeffery Brosseau saw the Tahoe, with Mr. Hernandez
in it, a short time later. When he was certain that other police
were nearby, he activated his lights and pulled Mr. Hernandez over,
informing him that he his license plate was obstructed. Mr.
Hernandez got out of his car to look at the license plate. Almost
immediately, three other police vehicles arrived, the officers
yelled at Mr. Hernandez with guns pointed at him and told him to
put up his hands, he was handcuffed and put in the back seat of a
squad car.[1] Mr. Hernandez' six year old daughter was with him; she

---

[1] Government witnesses gave a different version of these
facts, stating that Mr. Hernandez was never handcuffed and that
guns were not drawn. I credit Mr. Hernandez' version of the facts

2

remained in the Tahoe.

Mr. Hernandez was asked for and gave permission to search the Tahoe. In it, police found a shoe box containing more than $30,000 in cash. Within a half hour, Mr. Hernandez gave police permission to search his apartment at 5328 Sawyer. The facts surrounding his consent to search his apartment are disputed. The parties agree that the following occurred: DEA agent Eric Williams got in the squad car with Mr. Hernandez. Agent Williams told Mr. Hernandez that he was in a lot of trouble, they knew he was dealing heroin, they had his partner (co-defendant Jeffrey Cubero), and he should think about cooperating. Mr. Hernandez asked if he could call someone to come and get his daughter. He was told, "Not yet." The agent then left the squad car for a few minutes. When he returned he asked if Mr. Hernandez was ready to cooperate. At this point, the testimony differs. Mr. Hernandez says Agent Williams told him that if he did cooperate they would take it easy on him and if not, they could get a warrant anyway if he did not sign the consent to search his apartment; they would also impound his Tahoe and his daughter would be taken to DCFS (the Department of Children and Family Services), and they would arrest the pregnant lady they saw leaving his apartment. Mr. Hernandez testified he felt pressured and agreed to sign the consent form allowing the search of both 5326 and 5312 N. Sawyer. Agent Williams agrees that he told Mr.

---

on these points.

3

Hernandez that if he did not cooperate, he would obtain a search warrant anyway and he says he told him that unless a family member could take his daughter DCFS would be called. He denies making a threat to arrest the pregnant woman. At the apartment where Mr. Hernandez was taken, after police finished searching, his daughter was brought in and Mr. Hernandez told police his sister could take her. When the sister got there, police realized she was the pregnant woman who had been at the apartment earlier. Mr. Hernandez and his sister each gave written consent to the police to search 5526 Sawyer. At some point while he was in the police car, Mr. Hernandez also made incriminating statements.

    I.  The Arrest and Search of Mr. Hernandez' Vehicle

The government justifies the police stop of Mr. Hernandez on three grounds: that it was a legitimate traffic stop, although it concedes this was pretextual, because Mr. Hernandez' license plate was obstructed; that the stop was a legitimate stop under *Terry v. Ohio*, 392 U.S. 1 (1968); and that there was probable cause to arrest Mr. Hernandez based on the statements of the confidential informant and the prior arrest of Mr. Hernandez' co-defendant and the finding of heroin in the bag taken from Mr. Hernandez' building by the co-defendant.

The government based its justification of a traffic stop on language in 625 ILCS 5/3-413(b), which requires that "registration stickers issued as evidence of renewed annual registration shall

... be clearly visible at all times." In fact, Mr. Hernandez' vehicle displayed a temporary Illinois license plate, and not a registration sticker, which are only applied to regular license plates in years subsequent to their initial issue. The plate was clearly visible but because the frame that held it (Illinois law requires that "every registration plate shall at all times be securely fastened in a horizontal position to the vehicle," 625 ILCS 5/3-413(b)) covered the very bottom of the plate, the year, which is displayed at the far bottom of the plate, cannot be seen. Theoretically, this could be a violation of law because language not relied on by the government in its response to Mr. Hernandez' motion says the plate shall be "clearly visible and maintained in a condition to be clearly legible" but the fact that even the government did not rely on this part of the statute argues against allowing the government to base the arrest in this case on that language. And, although as the government notes, the fact that there are many violations of a statute does not mean the police cannot choose to enforce a statute on some occasions, the fact that the government, which has the burden of proof, has not shown (or even attempted to show) that it is possible to frame a temporary plate so as to comply with a construction of the language that would both ensure the plate be fastened securely and expose the year of expiration, also argues against a permissible arrest on the basis of a violation of the law for having an "obstructed" license

5

plate.

I nevertheless conclude that there was probable cause to arrest Mr. Hernandez at the time Officer Brosseau stopped Mr. Hernandez' vehicle.[2] "Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that an offense has been committed." *United States v. Burrell*, 963 F.2d 976, 986 (7th Cir. 1992). "Probable cause requires more than bare suspicion but need not be based on evidence sufficient o support a conviction, nor even a showing that the officer's belief is more likely true than false." *Id.* When an informant is involved, probable cause may turn upon the informant's reliability, basis for knowledge, and degree of detail, as well as the ability of the police to corroborate the information. *United States v. Johnson,* 289 F.3d 1034, 1038-39 (7th Cir. 2002).

In this case, the police had established the reliability of the informant in earlier cases. In addition, the information provided by the confidential source in this instance had been

---

[2] As it turned out, Mr. Hernandez did not have his driver's license with him. Therefore, under Illinois law, he was subject to arrest at that time. This would not justify the stop itself of course. The stop would not qualify as a *Terry* stop because the detention of Mr. Hernandez was not limited in scope or executed through the least restrictive means reasonable. *United States v. Jackson,* 300 F.3d 740, 745 (7th Cir. 2002). As all witnesses conceded, Mr. Hernandez was under arrest from the time he left his vehicle.

corroborated with the arrest of Mr. Hernandez' co-defendant, who had come from one of the three addresses listed by the source, gone to the address at which Mr. Hernandez lived, and left with the bag that was found to contain heroin in the form described by the source. Under these circumstances, probable cause existed to arrest Mr. Hernandez. *See Alabama v. White*, 496 U.S. 325, 331 (1990) (if "an informant is shown to be right about some things, he is probably right about other facts that he has alleged, including the claim that the object of the tip is engaged in criminal activity"); *United States v. Huebner*, 356 F.3d 807, 814 (7th Cir. 2004).

Mr. Hernandez argues that he only consented to the search of his vehicle because the police were pointing guns at him. As I understand it, however, his consent was not given until he was handcuffed and sitting in the squad car, at which point the evidence did not indicate guns were still evident. At any rate, police were entitled to search Mr. Hernandez' Chevrolet Tahoe once they lawfully arrested him. *United States v. Arango*, 879 F.2d 1501, 1504 (7th Cir. 1989).

## II. Searches of the Three Apartments

Mr. Hernandez makes two arguments in support of his claim that all items found in the searches of 5312, 5328 and 5526 N. Sawyer must be suppressed. The first is that everything flowed from his illegal arrest but since I have found that the arrest was proper,

7

this argument fails. He also argues that he only consented to the search of 5328 N. Sawyer under duress. The duress claimed was that he was handcuffed, in a police vehicle, while his young daughter remained in his own vehicle, and that he was told that she would be turned over to DCFS and the pregnant lady would be arrested if he did not sign the consent form.

The Fourth Amendment permits police to conduct a warrantless search if an authorized individual voluntarily consents to the search. *United States v. Duran*, 957 F.2d 499, 501 (7th Cir. 1992). The consent must be freely and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). The question of whether consent is voluntary "is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227. As the Supreme Court noted in *Schneckloth*, determining whether someone's action is voluntary when he is the subject of official action involves an accommodation of conflicting values involving the need for police investigation and fairness to an accused. *Id.* at 224-25.The Seventh Circuit has identified several non-dispositive factors that courts may look to in determining the voluntariness of a defendant's consent: (1) the defendant's age, education and intelligence; (2) whether the defendant was advised of his rights; (3) the length of defendant's detention prior to giving consent; (4) whether the individual immediately consented, or whether police officers made repeated requests for consent; (5) the existence or

8

absence of physical coercion; (6) whether the individual was in custody. *Valence v. Wisel,* 110 F.3d 1269, 1278 (7th Cir. 1997). Also relevant is the defendant's familiarity with the criminal justice system. *United States v. Rice,* 995 F.2d 719, 724 (7th Cir. 1993).

The record does not contain a lot of information about Mr. Hernandez personally. According to the Pretrial Services Report, he was 32 years old at the time of his arrest, but no information has been provided as to his education or intelligence. He testified at the hearing and appeared to have normal intelligence. Mr. Hernandez signed a consent to search form that stated that he did not have to give his consent. He was familiar with the criminal justice system, having two prior felony convictions. He had not been in custody long when he signed the written consent to search his apartment. I also conclude that Mr. Hernandez consented almost immediately, since the search of the house began approximately one half hour after Mr. Hernandez' arrest, which was not in front of the apartment. No physical coercion is claimed. He was, of course, in custody.

The fact that Mr. Hernandez signed a consent form "weighs heavily toward finding that his consent was valid." *United States v. Taylor*, 31 F.3d 459, 463 (7th Cir. 1994). The evidence to the contrary, apart from the facts that he was in custody, handcuffed, and there were numerous police present — which have been held not

to constitute improper coercion, *see, e.g., United States v. Guiterrez,* 92 F.3d 468, 471 (7th Cir. 1996), are the statements, if true, that if he did not consent DCFS could be called to take custody of his daughter and the threat to have the pregnant lady, who unknown to the authorities at the time, was Mr. Hernandez' sister, arrested. If the alleged threats were made, they could constitute sufficient coercion to invalidate the signed consent. *E.g., United States v. Talkington,* 843 F.2d 1041, 1048-49 (7th Cir. 1988); *United States v. Bolin,* 514 F.2d 554, 560 (7th Cir. 1975). Whether the threats were made is a close question. I have found that the two policemen who testified at the hearing as well as DEA agent Williams were not entirely truthful with respect to the circumstances surrounding Mr. Hernandez' arrest and detention. Nevertheless, I conclude that the government has met its burden of establishing that more probably than not Agent Williams did not threaten to arrest Mr. Hernandez' sister, the pregnant lady. My conclusion is based principally on the fact that Mr. Hernandez later called his sister to come to the apartment at 5328 N. Sawyer to pick up his daughter. If he was concerned that she would be arrested, it seems unlikely that he would have called her.[3] That does not dispose of the argument that Agent Williams told Mr.

---

[3] If he had no one else to call, perhaps he would have. But he has not explained the discrepancy, and if she was arrested, as he said he thought was being threatened, she would not have been able to take his daughter.

10

Hernandez that if he did not consent to a search of 5328 N. Sawyer, he would be taken down to the police station and DCFS would be called to take his daughter. However, if Agent Williams did make the statement, it appears it was an accurate statement of what might have happened if Mr. Hernandez had not given his consent. In that case, it was not improperly coercive. *See United States v. Rodgers,* 186 F.Supp.2d 971, 976 (E.D. Wis. 2002). Accordingly, I find that the consent to search 5328 N. Sawyer was validly obtained.

At the same time Mr. Hernandez gave consent to search 5328 N. Sawyer, he gave consent to search 5312 N. Sawyer. That consent is therefore also valid. Mr. Hernandez, as well as his sister, gave consent to search 5526 N. Sawyer. There has been no allegation that any additional coercion was used to obtain consent to search that apartment. The motion to suppress evidence found at all three apartments is therefore denied.

### III. Statements Made by Mr. Hernandez

While in the police car, Mr. Hernandez made incriminating statements in response to questioning by Agent Williams. At the hearing on the motion to suppress, Agent Williams gave conflicting testimony concerning whether the statements were made prior to the time he gave Mr. Hernandez warnings pursuant to *Miranda v. Arizona,* 384 U.S. 436 (1966). Agent Williams admits that he did not initially give *Miranda* warnings. Mr. Hernandez testified that he

11

was not given the warnings until he was about to leave 5326 N. Sawyer after all the searches were complete. I conclude that more probably than not Mr. Hernandez is telling the truth. Thus, under *Missouri v. Siebert,* 124 S. Ct. 2601, 2604 (2004), the statements made by Mr. Hernandez at the time of his arrest, in the police car, and at 5326 N. Sawyer may not be used at trial.

ENTER ORDER:

*Elaine E Bucklo*

_____
**Elaine E. Bucklo**
United States District Judge

Dated:   October 20, 2004